YAWMAN & ERBE MFG. CO. v. LIBRARY BUREAU.

(Circuit Court of Appeals, First Circuit. July 5, 1906.)

No. 641.

PATENTS—INFRINGEMENT—LOCK ROD FOR CARDS.

The Hunter patent, No. 628,886, for a lock rod for cards, while disclosing invention, is merely for a new mechanical arrangement of old elements, constituting an improvement on the prior art, and the invention is not so far an original one as to entitle the claims to a broad construction or application of the doctrine of equivalents. As so limited, *held* not infringed by the device of the Weidner patent, No. 760,404.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

Frederick F. Church, for appellant.

Odin Roberts (Charles D. Woodberry, on the brief), for appellee.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

ALDRICH, District Judge. The rights of the Library Bureau, the complainant below, reside in patent No. 628,886, to David E. Hunter, dated July 11, 1899, as it may stand affected by the prior art; and the Yawman & Erbe Manufacturing Company, the defendant below, rests its contention, for the right to manufacture and sell the device complained of, upon the Weidner patent, No. 760,404, granted May 17, 1904, as it may stand affected by the prior art.

Both patents relate to locks intended to secure in its place a device for holding index and reference cards used in private and public libraries and in banks, counting houses, and in other places of business.

The evidence discloses a large demand for a convenient device which shall secure such card records, designed for ready reference, from accidental and intentional derangement. The various patents relating to the same subject, and the prior state of the art with respect to locks, plugs, plungers, slots, grooves, and latches, variously adapted so as to be put in operation through the instrumentality of springs and released by the use of keys, put both the patents in suit in the field of inventions which relate to improvements upon existing conditions of the art, rather than in the domain occupied by patents relating to entirely new and original inventions and discoveries.

The learned judge of the Circuit Court in effect sustained both the Hunter and the Weidner patents, and, applying the rule of broad construction to the Hunter, held that the defendant infringed its fourth claim.

We quite agree with the conclusion below that both Hunter and Weidner conceived and described a mechanical arrangement amounting to patentable invention. We cannot, however, agree that Hunter's invention was so far original as to entitle it to a rule of construction which shall include other arrangements of old mechanical elements and means so adapted as to accomplish the same result or perform the same service in a substantially different way.

The Circuit Court seems to have acted upon the idea that as Hunter was the first to invent or adapt a spring lock contained altogether in the rod, with its plug or enlarged end, and in the housing, the rule of broad construction should be accorded to his claims. We cannot accept this assumption as altogether without defect, because the idea of throwing a plug or bolt into a slot for holding purposes, through the instrumentality of a spring mounted above or upon the side of a rod or the thing to be locked, was old. That Hunter's mechanical arrangement for mounting the spring in a housing above the rod, so adapted that it will throw the plunger into its proper holding position in the enlarged end of the rod, and so adapted that the rod can be relieved from the holding function of the plunger through the instrumentality of a key of a peculiar size and shape, with a hook or projection at the top point of its forward end, corresponding in size to the opening in the rod and to the point of the plunger—a key so shaped, by cutting away its lower edge beneath its hook, that, when thrust into position in the slot in the end of the rod, that, by pressing downward upon its rearward end, it is tilted like a lever over a fulcrum; a fulcrum created by its own peculiar shape, with the result that the hook or point projecting against the plunger presses it upwardly, thus unlocking the rod, when it may be withdrawn by the hook by pulling upon the key—was an ingenious mechanical adaptation and a useful invention, we make no question. We look upon what he did, however, as an ingenious mechanical arrangement of old elements, and, while we agree that he should be protected in what he

did and what he described, we hold the view that his invention was not so far an original one as to entitle the claims to the rule of broad construction.

In looking at the question of infringement and the question of equivalency of means and adaptation, it must be remembered that the groove in the large end of the Hunter rod, as described, is lengthwise with the rod, and only a sufficient width to enable it to receive a plunger of limited diameter, and that the holding slot into which the plunger is thrust by the spring when the rod is brought into a position to be locked has a circumference only sufficient to receive a plunger of such diameter as can pass through the groove, and it follows that the rod can only be inserted when the groove of the rod is directly upright and in alignment with the plunger, and thus when the rod is passing to its position of security, the groove receives the plunger which is already forced down by the spring, and the groove is so shaped at its bottom that when the rod is passed it presses the plunger upward until the slot is reached, when the plunger is forced into it by the spring, and the drawer is locked.

It must also be remembered that the hook of the key is designed not only to force the plunger upward and thereby to release the rod, but that the hook on the key is also designed to perform the function of withdrawing the rod from its place when unlocked, and that the rod would remain in its position unless withdrawn by the key by pulling at its rearward end.

It is clear that the leverage or pivotal action of the Hunter key under downward pressure upon its rearward end, which forces the hook upon the forward end of the key upwards and against the dog or plunger held down by the spring, is what unlocks the Hunter device. This is made clear by lines 80–104 of the specification, at page 1, where the mode of operation is described, and where it is pointed out that the key is left in a position to act as a withdrawing hook.

The Weidner device, based upon the Weidner patent, which it is urged infringes the fourth claim of the Hunter, has a rod not particularly unlike that of the Hunter in its general aspects. It likewise has an enlarged rearward end, with a groove rather than a slot therein, designed under mechanical adaptation to co-operate with other elements in locking the rod and the drawer.

It is claimed by the appellant that Weidner, in arranging and describing a device which would be useful in accomplishing what the demands of the public required, acted independently of the Hunter adaptation and without any knowledge of his invention. We need not deal with that aspect of the case, for the reason that we look upon both patents as describing an invention which should be limited under reasonable rules of strict construction to the mechanical arrangement and the adaptation of means which they describe. In other words, as we look upon the Hunter device as one accomplishing a desired and valuable service through an ingenious and inventive adaptation of old means, and upon the Weidner as accomplishing the same result through a substantially different mechanical arrangement of things that were known, we need not consider whether Weidner

was acting independently, or whether he was attempting to improve upon the Hunter idea through a different and useful arrangement of known mechanical appliances.

In the Weidner the bow spring, which is intended to lock the rod and the drawer by forcing its arms into the groove of the rod when the rod is thrust longitudinally forward through the thimble into its place for locking, is not mounted in a housing above the rod, but rests astride a bridge in the thimble, which is created by transversely slotting the thimble in such a way as to permit the arms of the spring to project transversely through its interior, and so adapted as to permit the arms of the spring to engage and hold the inserted rod at the shoulder of its circumferential groove. The spring itself locks the rod by its arms, which spring into the groove intended to receive them, rather than by a plug or plunger thrust into a socket by a spring mounted in a housing above. With the Weidner rod the rearward enlargement, designed to force open the spring as the rod is thrust forward to the place where it is to be locked by receiving the arms of the spring into its groove, is conical in shape at the forward end of the enlargement, and as the rod is forced forward the spring is opened by the cone-shaped enlargement until the rod is in its place, when the arms of the spring adjust themselves to the shoulder of the circumferential groove of the rod, and the rod and the drawer are locked. The groove to which we have referred extends circumferentially entirely around the rod, and it results from the cone shape of that part of the rod which opens the spring and from the fact that the groove extends around the rod that the rod may be inserted and thrust forward to its place without regard to any particular adjustment with reference to a limited slot designed to receive the point of a plunger operated by a spring like that in the Hunter. It is also true that under this arrangement the key may be partially inserted in the slot intended to receive it without regard to whether the slot or aperture designed to receive the key is upright in its alignment or otherwise. The key is square at its end, and is designed under forward and turning pressure to rotate in and with the rod, but without any influence upon the lock until the key comes into a position which permits it to pass between and engage the spring holding arms, when, while rotating, the key spreads them and disengages the rod, thus permitting a small and independent spring which resides within the thimble (engaging the conical-shaped portion of the rod at its tapering end and remaining under tension while the rod is locked) to throw the rod backward and outward, the rod thus being unlocked and thrown backward while the key is rotating under forward pressure.

The function of this independent spring in the Weidner device, which forces the rod backward when it is disengaged, is pointed out in the closing lines of claim 10 of the Weidner patent, where it is said that the unlocking permits the spring to actuate the rod longitudinally.

The Weidner key has no hook like that of the Hunter, and if it were to be mechanically changed, as was illustrated in argument,

so as to present a hook point, the hook would perform no function in removing the rod, because there is nothing in the mechanical arrangement upon which it could operate by either forward or backward movement, while in the Hunter the hook is an essential and necessary element of the Hunter construction, which it would seem can only be operated to unlock by pressing downward upon the rearward end of the key, thus forcing its point and the plunger upward, and when the rod is released from locked engagement by pulling backward and downward upon the rearward end of the key, its hook engages a shoulder within the sleeve or thimble designed with that idea, and the rod is pulled backward and outward, and thus the hook of the key, as pointed out in the Hunter specification, would seem to be a necessary means for withdrawing the rod.

Without undertaking to say which is the superior device, it seems clear to us that the mechanical arrangement is essentially different in the two inventions. The conclusion, therefore, is that the Hunter and the Weidner patents should each .stand upon its merits, unaided by a liberal rule of judicial construction extending the claims beyond the mechanical arrangement described. Where two patents like those in question relate to improved mechanical arrangement, and where the two structural and mechanical adaptations are so entirely different, and the modes of operation are so entirely unlike, the situation does not admit of the doctrine of equivalents as a foundation for finding and holding infringement.

The decree of the Circuit Court is reversed, and the case is remanded to that court, with directions to dissolve the injunction, and for further proceedings not inconsistent with this opinion; and the appellant recovers its costs of appeal.